```
              UNITED STATES DEPARTMENT OF JUSTICE
            EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
                       IMMIGRATION COURT
                     Boston, Massachusetts
```

File No.:  A 29 379 697                          September 12, 2003

In the Matter of

ENFENDIEU BULTIMER,             )        IN REMOVAL PROCEEDINGS

        Respondent              )

CHARGES:       Section 237(a)(2)(B)(ii) of the Immigration and
               Nationality Act as amended, are or at any time
               after admission have been a drug abuser or addict
               - withdrawn

               Section 237 (a) (2) (A) (iii) of the Immigration and
               Nationality Act as amended, at any time after
               admission convicted of an aggravated felony as
               defined in Section 101(a)(43)(B) of the Act
               (illicit trafficking in a controlled substance as
               described in Section 102 of the Controlled
               Substance Act including a drug trafficking crime
               as defined in Section 924(c) of Title 18 United
               States Code - withdrawn

               Section 237 (a) (2) (B) (i) of the Immigration and
               Nationality Act as amended, at any time after
               admission convicted of a violation of or a
               conspiracy or attempt to violate any law or
               regulation of a state, the United States or a
               foreign country relating to a controlled substance
               as defined in Section 102 of the Controlled
               Substances Act 21 U.S.C. 802 other than a single
               offense involving possession for one's own use of
               30 grams or less of marijuana

APPLICATION:   Asylum, withholding of removal under Section
               241(b)(3) of the Act, and relief under Article 3
               of the Convention Against Torture and voluntary
               departure in the alternative, cancellation of
               removal pursuant to Section 240A(a), pretermitted

AJG

| | |
|---|---|
| ON BEHALF OF RESPONDENT: | ON BEHALF OF DHS: |
| Pro se | Richard Neville, Esquire<br>Assistant District Counsel<br>JFK Federal Building<br>Room 425<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 |

ORAL DECISION OF THE IMMIGRATION JUDGE
--

The Respondent is a 29-year-old, soon to be 30-year-old married male, native and citizen of Haiti. Removal proceedings were instituted against him when the Immigration and Naturalization Service issued a Notice to Appear on March 14, 2001, served upon the Respondent in person on April 25, 2001 and filed it with the Immigration Court at Boston, Massachusetts on June 1, 2001. Exhibit 1. By way of this document, the Government contends that the Respondent is removable on the first two of the three charges stated above.

I note that the functions of INS have been taken over now by the Department of Homeland Security, the successor department.

The Respondent has been pro se during the course o these proceedings. The Respondent admitted allegations numbers one through four, denied allegation number five and denied the two charges of removability in the Notice to Appear. The Government subsequently filed a Form 1-261. See R Exhibit 14. In that, the Respondent is charged with an additional charge under

A 29 379 697                                    2                      September 12, 2003

A JG

237(a)(2)(B)(i) of the Act, the third of the three charges states above.

The Government submitted evidence originally Exhibit 4, the 1-181. The Respondent apparently came as a special immigrant. The memorandum of creation of record of lawful permanent residence shows that the Respondent at the time of his adjustment and of his admission was EWI, entry without inspection and that he subsequently adjusted December 20, 1993 as a special immigrant. The Government also submitted to the Court Exhibit 6 which was a conviction record in the name of the Respondent and it showed count one, possession to distribute Class B drugs and showed a guilty. The Respondent failed to appear for his hearing on September 18, 2001 and the Court found that he was removable on both of the charges in the Notice to Appear based on the evidence presented to the Court. The Respondent was then ordered removed and deported to Haiti and all relief was deemed abandoned because of his failure to appear. Subsequently, the Respondent made a motion to reopen, R Exhibit 1 and he indicated that he had plead guilty to possession of a Class B controlled substance only. He submitted some evidence showing that it was possession only. The Government opposed the motion to reopen, R Exhibit 2. However, based on the evidence that the Respondent had submitted, I felt that there was sufficient reason to reopen because the aggravated felony conviction may not have been able to be sustained. However, the Court lacked this information which the

A 29 379 697                         3                    September 12, 2003

AJG

Respondent provided.  It was new information to the Court and so I did open the case, R Exhibit 4.

There was additional evidence that the Respondent sent, R Exhibit 10 and the Government did withdraw the first charge, the 237(a)(2)(B)(ii) of the Immigration and Nationality Act and the Court did not sustain the aggravated felony charge in light of the evidence that it had in fact been possession only. It seems that originally he was charged with that, but it had been amended down. Based on the new evidence, I did sustain a third charge stated above and that is a violation of a controlled substance law.  I find that removability has been sustained by evidence that is clear and convincing on the third of the three charges stated above.  The Respondent has declined to name a country.  The Court has named Haiti as the country for removal purposes.  The Respondent has been a lawful permanent resident and at this point is still. He has filed his 1-589. I will consider it a timely filing because he has had status previously. There was no reason for him to file this before. The 1-589 is at R Exhibit 17 and the Court will also consider relief under 241(b)(3), withholding of removal and relief under Article 3 of the Convention Against Torture.

<u>STANDARDS FOR ASYLUM</u>

The Court will take into consideration lead cases on asylum, <u>INS v. Elias-Zacarias</u>; <u>INS v. Cardoza-Fonseca,</u> 1st Circuit cases as applicable, in particular, <u>Deborah Michael v.</u>

AJG

INS on social group, Board cases <u>Matter of Acosta</u> as modified by <u>Matter of Mogharrabi,</u> <u>Matter of Fuentes,</u> also <u>Matter of B-,</u> <u>Matter of Dass,</u> <u>Matter of Y-B-,</u> <u>Matter of S-M-J-,</u> <u>Matter of V-T-S-,</u> <u>Matter of Chen,</u> <u>Matter of N-M-A-,</u> <u>Matter of E-P-,</u> <u>Matter of A-E-M-,</u> and other lead cases on asylum.

## FINDINGS OF FACT

The Respondent came to the United States when he was 16 years of age and soon to turn 17. The Respondent lived with his mother and father in Haiti prior to his coming to the United States. He had three older sisters or two older sisters. He is not aware of any brothers that he had. He has had no contact with his family since coming to the United States. He had an audio cassette tape that was sent to him by someone in Haiti describing that the Respondent's father, Jorden, had been killed. The Respondent heard the tape or received the tape approximately November `95 and on the tape, it indicated that this had occurred approximately a couple of months previously. That would put the death of the father at approximately August or September of 1995.

Respondent claims that his father was a ton ton macoute under Baby Doc. He stated that he wore the Doc blue uniform and he arrested people for stealing and fighting and other crime. Respondent stated that on the tape, the person had stated that he had "a problem with a dude." The Respondent does not know who killed his father, what exactly the matter was about. There was apparently an altercation. Apparently this person said to the

AJG

Respondent's father that, don't forget what you did, inferring that he knew that he was one point a ton ton macoute. Respondent claims that his father did not do too much as a ton ton macoute and therefore, after Baby Doc left, he was not killed as many ton ton macoute were who was committed more grievous offenses, but was allowed "to slide." The matter did seem to be a personal matter between this person and the Respondent's father. It is unknown what is though that was mentioned of the father's past as a ton ton macoute.

The Respondent came to the United States as a EWI, entry without inspection, and subsequently adjusted here in the United States as a special immigrant. He had no family here in the United States. He came to the United States with a group of other children for a better life.

The Respondent stated at first that he had never been arrested in Haiti, then he said that he had been arrested for one day when he was 16 for protesting and then he stated when he was 16, he used to go and get water for police officers. He then stated that he was arrested for about three weeks and that was in 1987 and that was after protesting. That was the second time that he had been arrested. The Respondent claimed that he was 13 when he was doing the protesting, although earlier he had said that he was 16. Trying to resolve these times and dates, I will find that the Respondent's last rendition of what happened is the most accurate and therefore, I find that the Respondent, when he

A 29 379 697                                  6                           September 12, 2003

AJG

was 13 years of age, was arrested on one occasion as part of large protests in Haiti. They were protesting that people were being killed in the street and left without being picked up and also that there was no money for school and that there were bad living conditions all around.  And, I find further that the Respondent was arrested a second time in 1987 when he was 13 years old and held for approximately three weeks in which he had to lie on the floor for sleeping and that he did errands such as going and getting water for police officers. He was not harmed during that time and he was eventually released to his family. The Respondent engaged in no other protests from age 13 until the time that he left.

The Respondent was in a foster home in the United States.  He was also at Boys Town, according to his testimony, for a period of time. The Respondent went to the 11th grade in the United States. The Respondent married in 2001. The Respondent has three children.  None of the children are of the marriage.  Two children are from one mother who lives in Brockton and one child is from another mother who lives in Brockton. The Respondent originally stated that he had two children on his asylum application, but it appears that he has a third. Although he did not sign the birth certificate, the child bears his last name.

The Respondent claims that one needs $3,000 in order to be able to get out of jail once one is deported to Haiti. He

A 29 379 697                           7                    September 12, 2003

AJG

states that the system is totally corrupted. I do not have an independent corroboration of that information from the Respondent and I'm not certain of his foundation for it, but I will simply note that my finding is that that is his belief.

## CREDIBILITY

The Respondent, on several occasions, has given a various answers.  He listed only two children on his application. He explained later why he did not. I wasn't particularly persuaded that that was a sufficient reason not to list his third child, but in deference to the Respondent, he did state that he had three children during the course of his testimony and the Court took down the information on a daughter, Jokaya Bultimer, who was born in March 5, 1999. I thought that the Respondent had stated that he had two elder sisters. He stated that he had three.  I'll resolve it in his favor with the last testimony being considered the most accurate, that he has three elder sisters.  The part of Respondent's testimony that concerns me the most, however, is that in the course of his testimony, he stated that he was never arrested in Haiti, then he stated he was arrested and just held for one day, and then when asked directly about the statement in his 1-589 that he had been jailed for three weeks, he suddenly remembered that he had in fact been in jail for three weeks. It did not appear from the Respondent's testimony that this was a particularly traumatic time. It sounds as though he did errands and was kept for three weeks but he was

A 29 379 697                                8                        September 12, 2003

AJG

not harmed physically in any way. He had the inconvenience of lying on the ground, but apart from that, nothing further and it did seem to slip the Respondent's mind that he had even endured these three weeks. I am unsure, frankly, whether he spent three weeks in jail or not. But I will accept the Respondent's final statement that he did spend three weeks in jail. He stated that he had trouble remembering about things back then and it did not seem that the failure to remember was due to repressing a traumatic event, it appeared to the Court, if in fact I believe him, that it simply was not terribly memorable and it did not rise to consciousness. The Respondent testified that he has never been involved specifically in a political organization and that appears to be a credible statement. His protests were general protests with many people about the general conditions in Haiti. The Respondent did not remember the name of the president at the time that he was protesting. He does not appear to have been politically conscious, much less active.

As to the Respondent's statement about having to have money when one arrives in Haiti as a deportee, I have no corroboration of that. I've indicated in my findings of fact that is the Respondent's belief and I have nothing further on that.

I note that <u>Matter of J-E-,</u> does refer specifically to Haitian prisons and those are for deportees who have been convicted of crimes and in this case, the Respondent does have a

AJG

drug conviction; not for possession with intent to distribute cocaine as originally charge, but for possession only, and so given that we have <u>Matter of J-E-,</u> I think that it is likely that the Respondent's belief comports with the fact that he has a high likelihood of going to jail upon his arrival because he is being deported and he is being deported for a drug matter.

    I note that the Respondent's statements about Haiti are somewhat vague. In truth, he left when he was 16 and has not had any communication directly with his family. He hasn't heard from them at all. He simply has a tape that indicates that his father died. To the extent that the Respondent's fear is based on speculation and is unfounded, that would not be credible. But I would note that the Respondent does have a generalized fear of returning to Haiti and he has stated that his main problem is that he would have to go to jail and that is what he fears the most.

<u>THE ON ACCOUNT OF REQUIREMENT</u>

    The Respondent, as I've indicated, stated that his main fear is of going to jail. He has no money and he would be unable to free himself from jail when he is deported. The Court considered imputed political opinion for this Respondent because of the Respondent's statement that his father had been a ton ton macoute. The Respondent's father died in 1995. The Respondent was 16 when he left. It does not seem likely that the Respondent would have fear based on imputed political opinion, to wit, his

AJG

father's political opinion due to the vast length of time that has passed. The Respondent stated that there might be someone in Port-au-Prince because he doesn't know what his father did and who might have a beef against him or the family. This is highly speculative and I find that he does not have the nexus to imputed political opinion nor political opinion of his own which is no political activity.

As to membership in a particular social group under Deborah Michael v. INS in the 1st Circuit, one case consider nuclear family as being a particular social group. Again, it does not appear that this particular social group has the same import that it had in Deborah Michael v. INS,. There was definite retribution taken against the family for the actions of another family member and here it does not seem likely that that would happen here again because of the length of time. His father is dead at this point. He does not know about the other family members and so this seems to be quite unfounded and based on speculation. I also note that the Respondent did not cite either of these as his main problem. His main problem was going to jail.

Additionally, the Respondent has not shown that he could not live elsewhere in Haiti. The Respondent grew up in Port-au-Prince. He did note that other areas of Haiti are in the country, that he would have to have land to live there and that he would not have any money to buy land. I'm not entirely

A 29 379 697                     11                September 12, 2003

AJG

convinced by that, that the Respondent could not live elsewhere and do something such as hire on for work. It may be that as a person who grew up in the city, he doesn't particularly want to live in the country, but if in fact he is concerned about these two grounds, seems to me he could certainly take measures to live elsewhere in Haiti and be safe.

### WITHHOLDING OF REMOVAL UNDER 241(b)(3)

The Respondent must show that it is more likely than not that his life or freedom would be threatened on account of one or more of the five statutory grounds. See INS v. Stevic. My analysis in terms of the on account of nexus is the same for this category of withholding of removal and because he cannot meet the more generous well-founded fear standard for asylum, he cannot meet the more stringent standard for withholding of removal under 241(b)(3).

### RELIEF UNDER ARTICLE 3 OF THE CONVENTION AGAINST TORTURE

The case most directly on point is Matter of J-E-. See also Matter of G-A-, and other lead cases on Convention Against Torture. The Respondent has not been tortured in the past and it does not seem likely that he would be tortured in the future by the government or through the acquiescence of a public official. The Respondent fears imprisonment upon his arrival in Haiti as a deportee. In addition, the Respondent does have a drug conviction. However, Matter of J-E- held that that does not constitute torture under Article 3 of the Convention Against

A 29 379 697             12             September 12, 2003

AJG

Torture. It does not meet the necessary prongs for that form of relief. That relief will also be denied.

## VOLUNTARY DEPARTURE IN THE ALTERNATIVE

The Respondent's application for voluntary departure will be denied. The Respondent has stated that he has no money and it appears that he's not able to return money to go to his home country. Further, the Respondent is a mandatory detention at this point. The Court, however, would deny voluntary departure as a matter of discretion because of the Respondent's conviction and because I find that he is not worthy of the privilege of voluntarily departing this country.

## CANCELLATION OF REMOVAL PURSUANT TO SECTION 240A(a) OF THE ACT

The Respondent is ineligible for cancellation of removal for certain lawful permanent residents because he does not have the statutory eligibility. The Respondent came to the United States on September 14, 1990 according to the 1-213 at Exhibit 5. He adjusted to LPR status December 20, 1993 and that was at New York City. The Respondent, for cancellation of removal, must have five years as a lawful permanent resident. The incident date for the possession of cocaine conviction was February 22, 1997. I believe I may have at one point calculated the date of entry at the date of lawful permanent residence which was in error. Actually, the Respondent does not have even the five years lawful permanent residence for cancellation of removal and he does not have the five plus two years in any other status.

A 29 379 697                                   13                        September 12, 2003

AJG

So the Respondent's application for cancellation of removal must be pretermitted.

## ORDER

The Respondent's applications for asylum, withholding of removal under 241(b)(3) and relief under Article 3 of the Convention Against Torture be and the same are hereby denied as Respondent has not met his burden.

IT IS FURTHER ORDERED that Respondent's application for voluntary departure in the alternative be and the same is hereby denied in the exercise of discretion.

IT IS FURTHER ORDERED that Respondent's application for cancellation of removal pursuant to Section 240A(a) of the Act be and the same is hereby pretermitted as Respondent does not have the threshold statutory eligibility.

IT IS FURTHER ORDERED that the Respondent be removed and deported to Haiti on the charge in the Form 1-261, the third of the above charges, to wit, pursuant to Section 237(a)(2)(B)(i) of the Act.

                                                                _____
                                                                PATRICIA SHEPPARD
                                                                Immigration Judge

A 29 379 697                          14                          September 12, 2003

CERTIFICATE PAGE

I hereby certify that the attached proceeding before

PATRICIA SHEPPARD, in the matter of:

ENFENDIEU BULTIMER

A 29 379 697

Boston, Massachusetts

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.

Amanda Ginsburg

Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland 20852
(301) 881-3344

December 21, 2003
(Completion Date)